**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 95-30053
Summary Calendar

_____


CHARLES RAYMOND,

Plaintiff-Appellant,

VERSUS

NATCHITOCHES AUTOMOTIVE, INC., and
LARRY WATTS,

Defendants,


NATCHITOCHES AUTOMOTIVE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(93 CV 756)

_____
September 14, 1995


Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:[1]

In his civil rights complaint, Charles Raymond alleged that defendant, Natchitoches Automotive, Inc., refused to sell him an auto part because he is black. After a bench trial, the district court found that Raymond had failed to establish a prima facie case

---

[1]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

of race discrimination. Because the district court's findings are not clearly erroneous, we affirm.

I.

Raymond, and his mechanic, Louis Easley, went to the Big A Auto Shop in Natchitoches, Louisiana (d/b/a Natchitoches Automotive, Inc.), to purchase a universal joint for his pickup truck. Leon Besant, an employee of the auto parts store, sold them a universal joint which did not fit. Raymond, Easley, and Besant are all black. Raymond and Easley returned to Big A to exchange the part. Larry Watts, the white owner of the store, refused to exchange the part because the men did not have a receipt. Raymond offered to buy a new part, instead, but Watts refused to sell him one and told him to leave the store. Watts testified that the first universal joint had come back smeared with oil and grease and that he was unwilling to sell Raymond a new part unless he knew the new part was correct. Watts' catalog showed that Raymond and Easley had been sold the correct part, so he told them to return with the old universal joint or with the drive shaft so that it could be measured.

Raymond and Easley went to Besant's home and told him what had happened. Besant agreed to help and the three men returned to the store. Raymond gave Easley $20 and Easley and Besant went in to exchange the part. Watts told Besant, "`Just give them the damn money back, I ain't fucking with them no more, let them take their business somewhere else.'" Besant gave Easley the correct number for the replacement part and told Easley where he could buy it.

2

Easley returned to the truck with the money for the first part but without the replacement part.

Raymond testified that he believed Watts mistreated him and refused to do business with him because of racial prejudice. Although Watts did not use any racial epithets, Raymond's belief that Watts was motivated by racial animus was based upon the way that Watts spoke to him. Watts admitted that he might have been "short" with Raymond and Easley and stated that "when you tell somebody what you could do and they keep on reasking you and reasking you and reasking you, sometimes you do get short, yes."

Besant, who had worked for Watts for fourteen or fifteen years, testified that he had not observed Watts discriminate against black customers. The store served everybody that came in, regardless of race. Most of the store's walk-in business, about 60 percent of total business, was black and, on weekends, up to 90 percent of the customers were black. Five out of eight employees were black and the assistant manager, Watts' "right-hand man," was black.

The district court found that Raymond had failed to show by a preponderance of the evidence that Watts refused to sell the part because Raymond is black. The court found that "plaintiff purchased a part, the part didn't fit, the part was returned, a refund was issued and a proper part would not be sold until the part to be replaced could be measured and duplicated. Race played no part in the vendor's decision." These findings are not clearly erroneous.

Raymond argues that he carried his prima facie case by showing that he was a member of a protected class and that he attempted unsuccessfully to enter into a contract with the defendant. Raymond argues that Big A's explanations were pretextual and that it should have been required to show that white customers, in similar circumstances, had received similar treatment. We disagree. The district court was entitled to conclude from the evidence presented that Watt's refusal to sell to Raymond was not motivated by purposeful discrimination. See Vasquez v. McAllen Bag & Supply Co., 660 F.2d 686, 687-88 (noting that claims of disparate treatment under Title VII require proof of discriminatory purpose). This appeal is frivolous and the district court's ruling is AFFIRMED.

4